# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Criminal No. 17-CR-58 (EGS)** |
| | ) | |
| **DOMINIC QUEEN,** | ) | |
| **Defendant.** | ) | |

## UNITED STATES' OPPOSITION TO DEFENDANT'S
## AMENDED MOTION FOR COMPASSIONATE RELEASE

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this opposition to defendant's Amended Motion for Compassionate Release [Dkt. 61]. Defendant, who has served less than two years of his five-year sentence in this case for drugs and firearms offenses, seeks release based upon the threat posed by the COVID-19 pandemic. Defendant's motion admits that defendant does not have any underlying health conditions that would place him at heightened risk for severe illness from COVID-19. *See* Dkt. 61 at 3.

The Court should deny the instant motion without prejudice because defendant has failed to exhaust administrative remedies by seeking compassionate release at Rivers CI, the correctional institution where he is incarcerated. Defendant's motion provides no documentation and proffers no specific facts to support its assertion that the warden of defendant's facility "has not acted within 30 days upon request to release [defendant]." *Id.* The institution where defendant is housed has no record of defendant submitting a request for either a reduction in sentence or a transfer to home confinement based upon COVID-19. As a result of defendant's failure to satisfy the threshold statutory requirement of seeking compassionate release through his correctional institution, the Court lacks authority to rule upon defendant's instant request.

Furthermore, even if the Court concludes, contrary to the government's position, that defendant's compassionate release motion is properly before the Court, the motion should be summarily denied because defendant has not demonstrated that a sentence reduction is warranted. Defendant, who is 28 years old, admits that he does not have any health conditions that are classified as risk factors for severe illness from COVID-19. Defendant therefore has not met his burden of demonstrating "extraordinary and compelling reasons" to warrant a sentence reduction. Nor has defendant shown that the sentencing factors under 18 U.S.C. § 3553(a) weigh in favor of his release, particularly in light of his criminal history, the short amount of time that he has served on his current sentence, and the Federal Bureau of Prisons ("BOP") assessment that he has a "high" risk for recidivism.

## **FACTUAL BACKGROUND**

On February 25, 2017, officers of the Metropolitan Police Department conducted a traffic stop on a vehicle driven by defendant. There were no other occupants of the vehicle. During the traffic stop, officers saw the barrel of a pistol sticking out from under the driver's seat. After a search of the vehicle, officers recovered a loaded pistol from under the driver's seat where defendant had been sitting, as well as 7 grams of heroin, 645 grams of marijuana, 319 oxycodone pills, a digital scale, and more than $4000 in cash. *See* Dkt. 33 (Statement of the Offense).

## **PROCEDURAL HISTORY**

On March 22, 2017, a federal grand jury indicted defendant on five charges: (i) unlawful possession of a firearm by a convicted felon; (ii) unlawful possession with intent to distribute (oxycodone); (iii) unlawful possession with intent to distribute (heroin); (iv) unlawful possession with intent to distribute (marijuana); and (v) using, carrying and possessing a firearm during a drug trafficking offense [Dkt. 1].

On May 31, 2018, defendant entered a guilty plea in accordance with a written plea agreement, pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure [Dkt. 32]. Defendant agreed to plead guilty to Counts One and Four of the indictment – *i.e.,* unlawful possession of a firearm by a convicted felon, and unlawful possession with intent to distribute (marijuana). *See* Dkt. 32 ¶ 1. The parties agreed that 60 months (five years) of incarceration would be an appropriate sentence in this case. *See id.* ¶ 4.

On September 25, 2018, the Court held a sentencing hearing. The Court formally accepted the parties' proposed sentence under Rule 11(c)(1)(C) and sentenced defendant to 60 months of incarceration, to be followed by three years of supervised release. 9/25/18 Tr. 14. On October 4, 2018, the Court issued a written judgment that was consistent with the sentence pronounced orally at the sentencing hearing [Dkt. 47].

On July 28, 2019, defendant filed a *pro se* motion titled "Defendant's Motion for Amendment of the Written Judgement Pursuant to Federal Rule of Criminal Procedure 36" [Dkt. 49]. Defendant's motion contended that the BOP's projected release date in this case was incorrect due to a purported error in the Court's written judgment – specifically, the failure to expressly indicate that defendant should receive credit in this case for all of the time that he served in custody prior to his sentencing. *See* Dkt. 49 at 3-4. On September 3, 2019, the government filed a motion to transfer defendant's Rule 36 motion, construed as a habeas petition under 28 U.S.C. § 2241, to the United States District Court for the Eastern District of North Carolina – the district in which defendant is presently incarcerated [Dkt. 53]. On May 27, 2020, the Court issued a Memorandum and Order granting the government's motion to transfer defendant's motion [Dkt. 62]. The Court held that based upon its review of the record, the written judgment in this case did not contain any clerical error within the meaning of Rule 36. *See* Dkt. 62 at 8. The Court further held that the claim

asserted in defendant's motion – which was based upon defendant's disagreement with the BOP's calculation of the jail-time credit attributable to this case, as opposed to defendant's parole revocation proceedings in D.C. Superior Court Case No. 2010 CF2 012804 – was ultimately a challenge to the BOP's calculation of the length of defendant's confinement. *See id*. at 11-12. The Court concluded that the proper vehicle for such a claim is a habeas petition pursuant to § 2241, which must name the warden of defendant's current correctional facility as the respondent and must be filed in defendant's district of confinement. *See id*. at 13-14. The Court accordingly transferred defendant's motion to the Eastern District of North Carolina. *See id*. at 15.

On May 23, 2020, several days before the Court issued its order concerning defendant's *pro se* motion, defendant filed through counsel a Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) [Dkt. 60]. On May 27, 2020, defense counsel filed an amended version of the compassionate release motion [Dkt. 61]. Defendant's motion seeks his release based upon dangers from the COVID-19 pandemic, although it acknowledges that defendant, who is 28 years old, does not personally have any underlying health conditions that put him at severe risk of illness from COVID-19. *See* Dkt. 61 at 1, 3. Instead, the motion asserts broadly that defendant's health is in danger based upon the risk of contracting COVID-19 while incarcerated, and argues that he should be released "on that basis alone." *Id*. at 3.[1] Defendant's motion claims that the warden of defendant's correctional facility "has not acted within 30 days upon request to release [defendant]," but it does not provide any documentation to support this assertion, nor does it proffer any specific facts

---

[1]     Defendant's compassionate release motion also repeats certain arguments from defendant's earlier *pro se* motion challenging the BOP's sentence calculation, including the erroneous assertion that the BOP "refused to uphold this Court's Order" to run defendant's sentence in this case concurrently with defendant's sentence in his Superior Court parole revocation matter (2010 CF2 012804). *Id*. at 1. As the Court's May 27th Order recognized, defendant fully completed his parole revocation sentence on September 14, 2018, prior to his sentencing in this case. *See* Dkt. 62 at 4.

regarding the timing and nature of defendant's purported release request. *Id*. Defendant's motion also fails to include any description of a viable release plan.

Defendant has served approximately one year and nine months of his five-year sentence in this case. *See* Ex. 1 (Sentencing Data) at 2. Accounting for good time credits, his projected release date is December 8, 2022. *See id*. at 1. Defendant is 28 years old. *See* Ex. 2 (Inmate Profile). All inmates in BOP custody are classified on a scale of Care Level 1 (healthiest) to Care Level 4 (requiring housing in a medical facility). Defendant's medical care is classified as Care Level 1, which denotes "healthy or simple chronic care." *Id*. Defendant's BOP medical records do not disclose any significant health conditions. This is consistent with the Presentence Report ("PSR") prepared by the Probation Office in September 2018, prior to defendant's sentencing hearing, which indicated that "defendant advised he is healthy and has no history of health problems." PSR ¶ 68. The BOP Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN") has assessed defendant to have a "High Risk Recidivism Level." *See* Ex. 2; *see also* 18 U.S.C. § 3632(a)(1) (each prisoner is classified as having a minimum, low, medium, or high risk for recidivism, in ascending order).[2]

The government hereby responds to, and opposes, defendant's Amended Motion for Compassionate Release [Dkt. 61].

---

[2] After defendant filed the instant motion, undersigned counsel contacted representatives for the BOP to evaluate defendant's suitability for home confinement under the CARES Act based upon the risks posed by COVID-19. The staff at defendant's correctional facility, Rivers CI, conducted a review and determined that defendant is not a good home-confinement candidate for the following reasons: (i) he does not meet any of the Centers for Disease Control and Prevention ("CDC") vulnerability guidelines for increased risk from COVID-19; (ii) he is not considered elderly, as he is only 28 years old; (iii) he has served only 34% of his sentence; (iv) he has no viable release plan; and (v) he has been assessed to have a high risk for recidivism.

## BOP RESPONSE TO THE COVID-19 PANDEMIC

As this Court is well aware, COVID-19 is an extremely dangerous illness that has caused many deaths in the United States in a short period of time, and that has resulted in massive disruption to our society and economy. In response to the pandemic, the BOP has taken significant measures to protect the health of the inmates in its charge.

Indeed, the BOP has had a Pandemic Influenza Plan in place since 2012. *See* BOP Health Services Division, Pandemic Influenza Plan-Module 1: Surveillance and Infection Control (Oct. 2012), available at https://www.bop.gov/resources/pdfs/pan_flu_module_1.pdf. That protocol is lengthy and detailed, establishing a multi-phase framework requiring BOP facilities to begin preparations when there is first a "[s]uspected human outbreak overseas." *Id.* at i. The plan addresses social distancing, hygienic and cleaning protocols, and the quarantining and treatment of symptomatic inmates.

Consistent with that plan, the BOP began planning for potential coronavirus transmissions in January 2020. At that time, the agency established a working group to develop policies in consultation with subject matter experts in the Centers for Disease Control and Prevention ("CDC"), including by reviewing guidance from the World Health Organization.

On March 13, 2020, the BOP began to modify its operations, in accordance with its Coronavirus Action Plan to minimize the risk of COVID-19 transmission into and inside its facilities. Since that time, as events require, the BOP has repeatedly revised the Action Plan to address the crisis.

BOP's operations are presently governed by Phase Seven of the Action Plan. The current modified operations plan requires that all inmates in every BOP institution be secured in their assigned cells/quarters, in order to stop any spread of the disease. Only limited group gathering is

afforded, with attention to social distancing to the extent possible, to facilitate commissary, laundry, showers, telephone, and computer access. Further, the BOP has severely limited the movement of inmates and detainees among its facilities. Though there will be exceptions for medical treatment and similar exigencies, this step as well will limit transmissions of the disease. Likewise, all official staff travel has been cancelled, as has most staff training.

All staff and inmates have been and will continue to be issued face masks and strongly encouraged to wear an appropriate face covering when in public areas when social distancing cannot be achieved.

Every newly admitted inmate is screened for COVID-19 exposure risk factors and symptoms. Asymptomatic inmates with risk of exposure are placed in quarantine for a minimum of 14 days or until cleared by medical staff. Symptomatic inmates are placed in isolation until they test negative for COVID-19 or are cleared by medical staff as meeting CDC criteria for release from isolation. In addition, in areas with sustained community transmission, all facility staff are screened for symptoms. Staff registering a temperature of 100.4 degrees Fahrenheit or higher are barred from the facility on that basis alone. A staff member with a stuffy or runny nose can be placed on leave by a medical officer.

Contractor access to BOP facilities is restricted to only those performing essential services (*e.g.,* medical or mental health care) or those who perform necessary maintenance on essential systems. All volunteer visits are suspended absent authorization by the Deputy Director of BOP. Any contractor or volunteer who requires access will be screened for symptoms and risk factors.

Social and legal visits were stopped as of March 13, 2020, and remain suspended to limit the number of people entering the facility and interacting with inmates. In order to ensure that familial relationships are maintained throughout this disruption, BOP has increased detainees'

telephone allowance to 500 minutes per month. Tours of facilities are also suspended. Legal visits will be permitted on a case-by-case basis after the attorney has been screened for infection in accordance with the screening protocols for prison staff.[3]

In addition, in an effort to relieve the strain on BOP facilities and assist inmates who are most vulnerable to the disease and pose the least threat to the community, the BOP is exercising greater authority to designate inmates for home confinement. On March 26, 2020, the Attorney General directed the Director of the BOP, upon considering the totality of the circumstances for each inmate, to prioritize the use of statutory authority to place prisoners in home confinement. That authority includes the ability to place an inmate in home confinement during the last six months or 10% of a sentence, whichever is shorter, *see* 18 U.S.C. § 3624(c)(2), and to move to home confinement those elderly and terminally ill inmates specified in 34 U.S.C. § 60541(g).

Congress has also acted to enhance the BOP's flexibility to respond to the pandemic. Under the CARES Act, enacted on March 27, 2020, the BOP may "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement" if the Attorney General finds that emergency conditions will materially affect the functioning of the BOP. Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (to be codified at 18 U.S.C. § 3621). On April 3, 2020, the Attorney General gave the Director of the BOP the authority to exercise this discretion, beginning at the facilities that thus far have seen the greatest incidence of coronavirus transmission. As of this filing, the BOP has transferred almost 3,900 inmates to home confinement since the Attorney General's March 26, 2020 memorandum. *See* https://www.bop.gov/coronavirus/.

---

[3]     Further details and updates of BOP's modified operations are available to the public on the BOP website at a regularly updated page: https://www.bop.gov/coronavirus/covid19_status.jsp.

All of these measures are designed to mitigate sharply the risks of COVID-19 transmission in a BOP institution. The BOP has pledged to continue monitoring the pandemic and to adjust its practices as necessary to maintain the safety of prison staff and inmates while also fulfilling its mandate of incarcerating all persons sentenced or detained based on judicial orders.

Unfortunately and inevitably, some inmates have become ill, and more will likely become ill in the weeks ahead. But the BOP must consider its concern for the health of its inmates and staff alongside other critical considerations. For example, notwithstanding the current pandemic crisis, the BOP must carry out its charge to incarcerate sentenced criminals to protect the public. It must consider the effect of a mass release on the safety and health of both the inmate population and the citizenry. It must marshal its resources to care for inmates in the most efficient and beneficial manner possible. It must assess release plans, which are essential to ensure that a defendant has a safe place to live and access to health care in these difficult times. And it must consider myriad other factors, including the availability of both transportation for inmates (at a time that interstate transportation services often used by released inmates are providing reduced service), and supervision of inmates once released (at a time that the Probation Office has necessarily cut back on home visits and supervision).

## LEGAL STANDARDS FOR § 3582(c)(1)(A) COMPASSIONATE RELEASE MOTIONS

Under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, the Court may, in certain circumstances, grant a defendant's motion to reduce his or her term of imprisonment based upon compassionate release. Before filing such a motion, however, the defendant must first request that the BOP file such a motion on his or her behalf. *See* § 3582(c)(1)(A). A court may grant the defendant's own motion for a reduction in his sentence only if the motion was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to

bring a motion on the defendant's behalf" or after 30 days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

If the exhaustion requirement is met, a court may reduce a defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). As the movant, the defendant bears the burden to establish that he is eligible for a sentence reduction. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).

The Sentencing Commission has issued a policy statement addressing reduction of sentences under § 3582(c)(1)(A). As relevant here, the policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and (iii) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13.[4]

The policy statement includes an application note that specifies the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic

---

[4]     The policy statement refers only to motions filed by the BOP Director. That is because the policy statement was last amended on November 1, 2018, and until the enactment of the First Step Act on December 21, 2018, defendants were not entitled to file motions under § 3582(c). *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239; *cf.* 18 U.S.C. § 3582(c) (2012). In light of the statutory command that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission," § 3582(c)(1)(A)(ii), and the lack of any plausible reason to treat motions filed by defendants differently from motions filed by the BOP, the policy statement applies to motions filed by defendants as well.

lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is:

(i)     suffering from a serious physical or medical condition,

(ii)    suffering from a serious functional or cognitive impairment, or

(iii)   experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, cmt. n.1(A)(ii). The application note also sets out other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances. U.S.S.G. § 1B1.13, cmt. n.1(B)-(C). Finally, the note recognizes the possibility that the BOP could identify other grounds that amount to "extraordinary and compelling reasons." U.S.S.G. § 1B1.13, cmt. n.1(D).

## ARGUMENT

This Court should deny defendant's motion for a reduction in his sentence without prejudice because defendant has failed to exhaust administrative remedies by seeking compassionate release at his current correctional facility. If the Court concludes, contrary to the government's position, that it does have authority to resolve defendant's motion, the Court should nonetheless summarily deny the motion because defendant has not demonstrated that a sentence reduction is warranted. Defendant has failed to meet his burden of showing any "extraordinary and compelling reasons" for a sentence reduction, as he admits that he does not suffer from any chronic medical condition that has been identified by the CDC as elevating his risk of becoming seriously ill from COVID-19. Nor has defendant demonstrated that that the sentencing factors under 18 U.S.C. § 3553(a) weigh in favor of his release, particularly in light of his criminal history, the short amount of time that he has served on his current sentence, and the BOP's assessment that he has a "high" risk for recidivism.

**I.      This Court Should Deny Defendant's Motion Without Prejudice Because Defendant Has Not Exhausted Administrative Remedies Through His Correctional Facility.**

The Court should deny defendant's instant compassionate release motion for a reduction of his sentence without prejudice because defendant has failed to exhaust administrative remedies. Defendant's motion claims, in a single-sentence assertion, that the warden of defendant's correctional facility "has not acted within 30 days upon request to release [defendant]." Dkt. 61 at 3. Defendant's motion, however, does not provide any documentation to support his claim that he has submitted a request for a reduction in sentence based on COVID-19. Nor does defendant proffer any specific facts regarding the timing and nature of defendant's purported release request. After defendant filed the instant motion, undersigned counsel contacted representatives for the BOP to determine the status of any release requests that defendant had submitted through his correctional facility. According to staff at Rivers CI, there is no record of defendant requesting either a reduction in sentence or home confinement through the facility.

The government is very mindful of the concerns created by COVID-19, and the BOP is making its best efforts both to protect the inmate population and to address the unique circumstances of individual inmates. However, 18 U.S.C. § 3582(c)(1)(A)'s exhaustion requirement is mandatory, and it continues to serve an important function during the present crisis. By failing to initiate a request for compassionate release at his correctional facility, defendant has not given the BOP an opportunity to make an assessment of his suitability for the relief that he now seeks.

As explained above, § 3582(c) provides that a court may not modify a term of imprisonment once it has been imposed unless it does so "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ."

§ 3582(c)(1)(A). The requirement that a defendant either exhaust administrative appeals or wait 30

days after presenting a request to the warden before seeking judicial relief is mandatory and must be

enforced by the Court. As the Third Circuit recently confirmed, where 30 days have not passed

following presentation of a request to a warden, the statute "presents a glaring roadblock foreclosing

compassionate release at this point." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *see also*

*United States v. Alam*, --- F.3d ----, 2020 WL 2845694, at *3-*4 (6th Cir. June 2, 2020) (agreeing with

*Raia*). The vast majority of district courts to address this issue agree. *See, e.g.*, *United States v. Epstein*,

2020 WL 1808616 (D.N.J. Apr. 9, 2020) (citing numerous cases).[5]

As the Supreme Court has recognized, "a judgment of conviction that includes [a sentence

of imprisonment] constitutes a final judgment and may not be modified by a district court except in

limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (internal quotation marks

omitted). Accordingly, once a district court has pronounced a sentence and the sentence becomes

final, the court has no inherent authority to reconsider or alter that sentence. Rather, it may do so

only if authorized by statute. *See, e.g.*, *United States v. Addonizio*, 442 U.S. 178, 189 & n.16 (1979);

---

[5]     The government notes that it is aware of two cases in this jurisdiction in which the
government did not oppose compassionate release motions on exhaustion grounds. One case is
*United States v. Samuel H. Powell*. There, the defendant argued in his unopposed motion that there
was exhaustion because the parties and the Court previously recommended that the BOP release
the defendant to home confinement, and the BOP had denied the request. *See* 94-cr-00316 (ESH),
Dkt. 96 at 5. In the alternative, the defendant argued that the Court should waive the exhaustion
requirement because it would be futile, given the BOP's previous decision on home confinement.
*See id*. The government did not file a written response, but it had indicated to the defense that the
government did not oppose release. *See id*. at 1 n.1. The defendant filed his motion on March 27,
2020, and the Court granted release in an Order issued that same day. *See id*. at Dkt. 96, 97. One
week later, in *United States v. Ghorbani*, the government and defense filed a joint submission that
explicitly argued in a footnote that the exhaustion requirement is waivable. *See* 18-cr-255 (PLF),
Dkt. 129 at 2 n.1. The compassionate release motions filed in these two cases were among the
earliest such motions filed in this jurisdiction. Regrettably, in these cases the government took,
either implicitly or explicitly, a position that is at odds with Department of Justice guidance. In the
instant case, as in the other compassionate release motions litigated here, the government asserts
the exhaustion requirement, for the reasons stated in the text above.

*United States v. Washington*, 549 F.3d 905, 917 (3d Cir. 2008); *United States v. Smartt*, 129 F.3d 539, 540 (10th Cir. 1997) ("A district court does not have inherent authority to modify a previously imposed sentence; it may do so only pursuant to statutory authorization.") (internal quotation marks omitted). Consistent with that principle, § 3582(c) provides that a court "may not modify a term of imprisonment once it has been imposed," except in three circumstances: (i) upon a motion for reduction in sentence under § 3582(c)(1)(A), such as that presented by defendant in this case; (ii) "to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure," § 3582(c)(1)(B); and (iii) where the defendant was sentenced "based on" a retroactively lowered sentencing range, § 3582(c)(2).

Given the plain language and purpose of the statute, the requirements for filing a sentence-reduction motion – including the requirement that a defendant exhaust administrative remedies or wait 30 days before moving in court for a reduction – are properly viewed as jurisdictional. Section 3582(c) states that a "court may not modify" a term of imprisonment except in enumerated circumstances. 18 U.S.C. § 3582(c). It thus "speak[s] to the power of the court rather than to the rights or obligations of the parties," *Landgraf v. USI Film Prods.*, 511 U.S. 244, 274 (1994) (internal quotation marks omitted), delineating "when, and under what conditions," a court may exercise its "'adjudicatory authority,'" *Bowles v. Russell*, 551 U.S. 205, 212-13 (2007) (quoting *Eberhart v. United States*, 546 U.S. 12, 16 (2005) (per curiam)). That conclusion is reinforced by the historical powerlessness of the courts to modify a sentence after the expiration of the term at which it was entered. *See United States v. Mayer*, 235 U.S. 55, 67-69 (1914); *United States v. Welty*, 426 F.2d 615, 617-618 & n.8 (3d Cir. 1970). Section 3582(c) accordingly has been understood as conferring

the jurisdictional authority that previously was lacking by providing express statutory authorization to modify otherwise final sentences.[6]

Furthermore, the Court may not ignore the exhaustion requirement based upon the situation presented by the coronavirus pandemic. While judicially created exhaustion requirements may sometimes be excused, it is well settled that a court may not ignore a statutory command such as that presented in § 3582(c)(1)(A). *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) ("[w]here Congress specifically mandates, exhaustion is required"). The Supreme Court recently reaffirmed that principle in *Ross v. Blake*, 136 S. Ct. 1850 (2016), in which it rejected a judicially created "special circumstances" exception to a statutory exhaustion requirement. Rejecting the "freewheeling approach" adopted by some courts, under which some prisoners were permitted to pursue litigation even when they had failed to exhaust available administrative remedies, *id.* at 1855, the Court demanded fidelity to the statutory text, explaining that the "mandatory language" of the exhaustion requirement "means a court may not excuse a failure to exhaust" even to accommodate exceptional circumstances, *id.* at 1856.

While a scattered minority of district courts have incorrectly excused the § 3582 exhaustion requirement as futile, many of those cases rested on the fact that the defendant had very few days

---

[6]     The D.C. Circuit has not decided this issue. *See United States v. Smith*, 467 F.3d 785, 788 (D.C. Cir. 2006) (noting that "Congress has, in language with a somewhat jurisdictional flavor, limited district court authority to modify sentences," but also that *Eberhart v. United States*, 546 U.S. 12 (2005), calls such a jurisdictional reading of § 3582(c) into question).

The government notes that even if the § 3582(c)(1)(A) exhaustion requirement is not jurisdictional, it is at least a mandatory claim-processing rule that must be enforced if a party "properly raise[s]" it. *Eberhart*, 546 U.S. at 19 (Fed. R. Crim. P. 33 is a non-jurisdictional but mandatory claim-processing rule). Indeed, even those courts that have concluded that the requirements of § 3582(c)(2) are not jurisdictional still enforce the statutory prerequisites to relief. *See, e.g.*, *United States v. Taylor*, 778 F.3d 667, 670 (7th Cir. 2015) (recognizing that even if a court has the "power to adjudicate" a motion under § 3582(c)(2), it may lack "authority to *grant* a motion . . . because the statutory criteria are not met") (emphasis in original). The government raises the § 3582(c)(1)(A) exhaustion rule here, and it must be enforced.

left to serve on the sentence, a consideration not present in this case. *See, e.g., United States v. Colvin*, 2020 WL 1613943, at *1 (D. Conn. Apr. 2, 2020) (inmate had 11 days left on her sentence); *United States v. Perez*, 2020 WL 1546422, at *1 (S.D.N.Y. Apr. 1, 2020) (inmate had less than 21 days left on his sentence and was recovering from two vicious beatings while in prison). More fundamentally, there is no "futility" exception to the exhaustion requirement of § 3582(c)(1)(A), as the Supreme Court has made clear that courts have no authority to invent an exception to a statutory exhaustion requirement. Two district courts have recently rejected the argument that any such futility exception exists under § 3582. *See United States v. Holden*, 2020 WL 1673440, at *5 (D. Or. Apr. 6, 2020); *United States v. Eberhart*, 2020 WL 1450745, at *1 (N.D. Cal. Mar. 25, 2020).

The vast majority of district courts to address this issue have agreed with the Third Circuit in *Raia*, the Sixth Circuit in *Alam*, and the government here, that the exhaustion requirement must be enforced. *See, e.g.*, *United States v. Epstein*, 2020 WL 1808616 (D.N.J. Apr. 9, 2020) (citing numerous cases). *See also, e.g.*, *United States v. Hofmeister*, 2020 WL 1811365, at *3 (E.D. Ky. Apr. 9, 2020) (explaining that the rule is jurisdictional, and perhaps even more necessary during the COVID-19 crisis); *United States v. Lugo*, 2020 WL 1821010, at *3 (D. Me. Apr. 10, 2020) (extensive analysis, concluding, "The Court regards the language of section 3582(c) as both clear and mandatory."); *United States v. Johnson*, 2020 WL 1663360, at *3-6 (D. Md. Apr. 3, 2020) (concluding in lengthy discussion that § 3582(c)(1)(A)'s exhaustion requirement is jurisdictional and, regardless, there are no exceptions to the exhaustion requirement); *United States v. Annis*, 2020 WL 1812421, at *2 (D. Minn. Apr. 9, 2020) ("There is no question that COVID-19 is a cause for alarm, and the Court does not fault [the defendant's] concerns, given his health conditions. However, given the scale of the COVID-19 pandemic and the complexity of the situation in federal institutions, it is even more important that [the defendant] first attempt to use the BOP's administrative

remedies."); *United States v. Fevold*, 2020 WL 1703846, at *1 (E.D. Wis. Apr. 8, 2020) ("Not only is exhaustion of administrative remedies required as a matter of law, but it also makes good policy sense. The warden and those in charge of inmate health and safety are in a far better position than the sentencing court to know the risks inmates in their custody are facing and the facility's ability to mitigate those risks and provide for the care and safety of the inmates."); *United States v. Gillis*, 2020 WL 1846792 (C.D. Cal. Apr. 9, 2020); *United States v. Smith*, 2020 WL 1903160 (D. Conn. Apr. 17, 2020); *United States v. Perry*, 2020 WL 1676773 (D. Colo. Apr. 3, 2020); *United States v. Zywotko*, 2020 WL 1492900 (M.D. Fla. Mar. 27, 2020); *United States v. Read-Forbes*, 2020 WL 1888856 (D. Kan. Apr. 16, 2020); *United States v. Carter*, 2020 WL 1808288 (S.D. Ind. Apr. 9, 2020); *United States v. Reeves*, 2020 WL 1816496 (W.D. La. Apr. 9, 2020).

Furthermore, a request would not be futile because the BOP fully considers requests for sentence reductions. When Congress expanded the availability of compassionate release in the First Step Act, it expressly imposed on inmates the requirement of initial resort to administrative remedies. This is for good reason: the BOP conducts an extensive assessment for such requests. *See* 28 C.F.R. § 571.62(a); BOP Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g), *available at* https://www.bop.gov/policy/progstat/5050_050_EN.pdf. Per the Procedures, the BOP completes a diligent and thorough review, with considerable expertise concerning both the inmate and the conditions of confinement. Indeed, the BOP often concurs with such requests. For example, during the period from the passage of the First Step Act on December 21, 2018, until mid-March 2020 – *i.e.*, before the coronavirus crisis began – BOP consented to a reduction in sentence in 55 cases.

The BOP's assessment will always be of value to the Court, especially during the current crisis. As explained above, the BOP must balance a host of considerations in deciding whether to

grant an inmate compassionate release or transfer an inmate to home confinement – including the health of the inmate and BOP staff, and also the safety of the public. The BOP is best positioned to determine the proper treatment of the inmate population as a whole, taking into account both individual considerations in light of an inmate's background and medical history, and more general considerations regarding the conditions and needs at particular facilities. The provision of § 3582(c)(1)(A) prioritizing administrative review therefore makes sense not only in the ordinary case, but also at this perilous time. As the Third Circuit has held, "[g]iven BOP's shared desire for a safe and healthy prison environment, . . . strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added – and critical – importance." *Raia*, 954 F.3d at 597. *See also United States v. McCann,* 2020 WL 1901089, at *2 (E.D. Ky. Apr. 17, 2020) ("The Court recognizes that these are unsettling times for everyone, including prisoners. But in such a context, the exhaustion requirement of the compassionate release statute is perhaps most important.").

For all of these reasons, the exhaustion requirement that affords the BOP initial review of compassionate release requests, such as defendant's request, cannot be excused. Defendant's motion should therefore be dismissed without prejudice for failure to exhaust administrative remedies.

## II.   If the Court Reaches the Merits, It Should Summarily Deny Defendant's Motion Because Defendant Has Failed to Show That a Sentence Reduction Is Warranted.

### A.   Defendant Has Not Demonstrated "Extraordinary and Compelling Reasons" for a Sentence Reduction.

If the Court concludes, contrary to the government's position, that it does have authority to resolve defendant's motion, the Court should nonetheless summarily deny the motion because defendant has failed to meet his burden of showing any "extraordinary and compelling reasons" for a sentence reduction. As explained above, a court can grant a sentence reduction under § 3582(c)(1)(A) only if it determines that "extraordinary and compelling reasons" justify the reduction and that "such a reduction is consistent with applicable policy statements issued by the

Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Sentencing Commission's policy statement defines "extraordinary and compelling reasons" to include, as relevant here, certain specified categories of medical conditions. *See* U.S.S.G. § 1B1.13, cmt. n.1(A). Those categories include (i) any terminal illness, and (ii) any "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* If a defendant does not have any health conditions that fall within one of the categories specified in the application note, and no other part of the application note applies, the defendant's motion for compassionate release must be denied.

For these reasons, defendant's generalized assertions about the risk of potentially contracting COVID-19 while incarcerated, and his claim that he should be released "on that basis alone," Dkt. 61 at 3, are insufficient to satisfy the requirements of the compassionate release statute. As the Third Circuit explained in *Raia*, 954 F.3d at 597, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." The two cases that defendant relies upon to argue that the pandemic alone justifies his immediate release – *United States v. Norbert* (S.D. Miss. Apr. 8, 2020) and *United States v. Garlock* (N.D. Cal. Mar. 25, 2020), *see* Dkt. 61 at 3 n.1, 5 – are inapplicable here, since neither case involved a motion for compassionate release by a defendant who was already serving a sentence. In *Norbert*, the court released the defendant on pre-trial bond after concluding, among other factors, that the government's case was "relatively weak," and that the defendant was neither a danger to the community nor a flight risk. *See Norbert*, 3:19-CR-50 (S.D. Miss.), at Dkt. 42. In *Garlock*, the court merely delayed the self-surrender date of a defendant

who was already on release after sentencing, after determining that the defendant was neither a danger to the community nor a flight risk. *See Garlock*, 2020 WL 1439980, at *1. In this case, by contrast, defendant is already serving a sentence of incarceration after being convicted, and he has failed to demonstrate, as he must under the federal compassionate release statute, that any "extraordinary and compelling reasons" justify a sentence reduction in his case.

The government acknowledges that if an inmate has a chronic medical condition (*i.e.*, one "from which [the inmate] is not expected to recover") that the CDC has identified as elevating the risk of becoming seriously ill from COVID-19, that may qualify as a "serious" condition that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility," U.S.S.G. § 1B1.13, cmt. n.1(A)(ii)(I), even if the same condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19. There is no evidence, however, that defendant has any such condition. Indeed, defendant's motion admits that defendant, who is 28 years old, does not suffer from any medical condition identified by the CDC as elevating his risk of becoming seriously ill from COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html.

For these reasons, defendant has not demonstrated any "extraordinary and compelling reasons" for the Court to grant compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), and the Court should decline to do so on that basis alone.

## B. Defendant Has Not Demonstrated That the § 3553(a) Sentencing Factors Weigh in Favor of His Release.

Defendant has also failed to demonstrate that he warrants a sentence reduction based upon the sentencing factors under 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A) (the court must consider the § 3553(a) factors, as "applicable," in determining whether a sentence reduction is warranted); *United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020). The factors that the Court

must consider under § 3553(a) include "the nature and circumstances of the offense," "the history and characteristics of the defendant," and also the need for a sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" "to afford adequate deterrence to criminal conduct;" "to protect the public from further crimes of the defendant;" and "to provide the defendant with needed educational or vocational training, medical care, and other correctional treatment in the most effective manner."

Defendant has not demonstrated that he is no longer a danger to public safety, particularly in light of the BOP's assessment that he has a "high" risk of recidivism. *See* Ex. 2. As noted, defendant's conviction in this case involved the possession of not only illegal narcotics, but also a firearm. Defendant committed the offense in this case while he was on parole for a sentence in an earlier D.C. Superior Court case. *See* Dkt. 42 ¶ 49. The PSR also shows that defendant has a significant criminal history, *see id.* ¶¶ 41-47, and he qualified as a career offender for purposes of the United States Sentencing Guidelines, *see id.* ¶¶ 12, 90. For that reason, defendant's five-year sentence in this case already reflects a significant benefit from his guilty plea, as he otherwise would have faced a substantially longer period of incarceration. *See id.* ¶ 86 (indicating that defendant's sentencing range under the U.S.S.G. was 210 to 262 months). The fact that defendant has served less than two years of his five-year sentence also weighs against his request for release. Finally, defendant has not proffered any evidence of rehabilitation during his incarceration.

In sum, the mere possibility that defendant might, while incarcerated, contract a disease that is also present in the community at large does not alter the appropriateness of the Court's sentence. That is especially true because defendant has not put forward any viable release plan or otherwise established that he would be appreciably less vulnerable to COVID-19 if he were released to the community than if he remains at Rivers CI.

For these reasons, defendant has not demonstrated that the § 3553(a) factors weigh in favor of a sentencing reduction in this case, and his motion should be denied on that basis as well.

## **CONCLUSION**

For the reasons stated above, the United States respectfully requests that the Court deny defendant's motion for compassionate release without prejudice due to defendant's failure to exhaust administrative remedies, or, in the alternative, summarily deny defendant's motion on the merits.[7]

Respectfully submitted,

MICHAEL R. SHERWIN
Acting United States Attorney
  for the District of Columbia
New York State Bar Reg. No. 4444188

MARGARET J. CHRISS
Chief, Special Proceedings Division
D.C. Bar Number 452403

  */s/ Timothy R. Cahill*
TIMOTHY R. CAHILL
Assistant United States Attorney
Special Proceedings Division
D.C. Bar Number 1032630
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-7270
Timothy.Cahill@usdoj.gov

---

[7]      If the Court determines to grant defendant's motion for release in this case, the government requests that the Court's Order allow for a 14-day quarantine period and a requirement for medical clearance prior to release, in order to minimize the possibility of any spread of COVID-19 from the correctional facility to the public. The government accordingly requests that the Court retain jurisdiction over the instant motion for 14 days after advising the parties of its decision to grant release. If defendant does not display symptoms or test positive for COVID-19 for a period of 14 days, the Court may then order his release. If, however, defendant tests positive during the initial 14-day period, the government will notify the Court and seek an extension of the release date until defendant has either displayed no symptoms for a period of 14 days or tests negative.

### CERTIFICATE OF SERVICE

I hereby certify that on June 5, 2020, I caused a copy of the foregoing opposition to be served on counsel of record via the Electronic Case Filing system.

<u>    /s/ Timothy R. Cahill          </u>
TIMOTHY R. CAHILL
Assistant United States Attorney